UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case No.: 07-22048-CIV  COOKE/BROWN

RONALD DE JESUS PALMA, *et al*.,

     *Plaintiffs*,

v.

BP PRODUCTS NORTH AMERICA, INC.,

     *Defendant.*

                         /

## <u>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

**THIS MATTER** is before the Court upon Defendant BP Products North America, Inc.'s Motion for Summary Judgment [DE 47]. The Motion has been fully briefed and is ripe for adjudication. The basic question to be addressed is whether the alleged negligence of BP Products North America, Inc. ("BP") was the proximate cause of Plaintiff Ronald De Jesus Palma's injuries. For purposes of this motion, BP does not contest that it had a duty or breached that duty, but focuses only on whether, if such a duty was breached, the cause of the injuries imposes liability on BP for them.

### BACKGROUND[1]

On November 3, 2005, Plaintiff Jacqueline Palma ("Mrs. Palma") drove her vehicle into the BP owned and operated gas station located at 195 N.E. 183rd Street, Miami, Florida. Ronald De Jesus Palma ("Mr. Palma"), Mrs. Palma's husband, was in the front passenger seat and the Palma's nephew, Ricardo Bayona ("Bayona") was in a rear passenger seat. Once Mrs. Palma had stopped the car in front of the gas pump, Mr. Palma went into the convenience store to pre-pay

_____

[1]These facts are taken from a composition of Defendant's statement of Undisputed Material Facts, Plaintiffs' Response to Defendant's Motion for Summary Judgment, and other relevant parts of the record, including the depositions of Jacqueline Palma and Camille Maldonado. Plaintiffs failed to file a statement of Material Facts in opposition to Defendant's motion and statement, as required under Local Rule 7.5.C. However, the Court has considered the lengthy factual background section in Plaintiffs' Response when determining whether there is any genuine issue of material fact.

for the gas.  While Mr. Palma was inside the convenience store a black male, the driver of a Nissan Xterra parked at a different pump, was apparently attempting to siphon gas from that pump.  The store clerk apparently shut off the pump, which caused the driver to move his vehicle to another pump, such that the Xterra was now facing the Palma's vehicle.  Mr. Palma exited the convenience store and began pumping gas.  While he was pumping gas, the driver of the Xterra approached Mr. Palma, and, in no uncertain terms, requested that Mr. Palma give him access to the pump.  Mr. Palma politely refused and explained that he would give him the pump when he was finished with it.  After completing filling his tank, Mr. Palma went back into the convenience store to collect the change from his pre-payment.  While Mr. Palma was inside the store, another black male succeeded in siphoning fuel from another gas pump, and told the driver of the Xterra to move his car to that pump.  In the process of moving the Xterra, the vehicle struck the Palma's car.  The driver of the Xterra pulled up next to the pump that had been siphoned, and began filling his tank with gas.  Mrs. Palma, having felt the collision, exited her car and approached the driver of the Xterra.  When confronted by Mrs. Palma about the accident, the driver refused to accept responsibility or observe the damage, and became verbally abusive towards Mrs. Palma.  As Mr. Palma exited the convenience store and began walking toward his car, Mrs. Palma informed him of the incident.  Mr. Palma then approached the driver of the Xterra and asked him to observe the damage.  The driver again refused.  Mr. Palma explained that he was going to call the police and began dialing 911 on his cell phone.  The driver of the Xterra then yelled, presumably to his associates in the Xterra, that Mr. Palma was calling the police.  Thereafter, the driver and at least two of his associates attacked Mr. Palma, repeatedly punching and kicking him.  The attackers and several other men then fled.  As a result of the attack, Mr. Palma has undergone three operations and is now permanently blind in his right eye. The entire event, from the time the Palma's pulled into the BP gas station until the attackers fled, spanned no more than several minutes.  And, according to Mrs. Palma's deposition, the time between when she confronted the driver of the Xterra and when her husband was attacked was no longer than a few minutes, with the time between her husband confronting the driver and the first punch being thrown reduced to mere seconds.  Mr. Bayona called 911 from the back seat of the Palma's car to report the battery, and according to Mrs. Palma, the police arrived ten to fifteen

minutes after the attack.[2]

**STANDARD OF REVIEW**

Summary judgment is proper when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue as to any material fact and compels judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Only the existence of a genuine issue of material fact, as opposed to a simple factual dispute, will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). No genuine issue of material fact exists when the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Of course, as this negligence case is brought under diversity jurisdiction, I am required to apply Florida substantive law to the facts. *See Ward v. Estaleiro Itajai S/A*, 541 F.Supp.2d 1344, 1346 (S.D.Fla. 2008) (citing *Walker v. Armco Steel Corp.*, 446 U.S. 740, 745 (1980) and *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

**DISCUSSION**

The basic elements of a cause of action for negligence are: duty; breach; causation; and damages. *See Clay Elec. Co-op., Inc. v. Johnson*, 873 So.2d 1182, 1185 (Fla. 2003) (quoting *Prosser and Keaton on the Law of Torts* 164-65 (W. Page Keeton ed., 5th ed.1984)). As noted earlier, the only issue presented on this Motion for Summary Judgment is that of causation. Causation refers generally to "proximate cause," which has been well analyzed by the Florida courts.

> "[T]he 'proximate cause' element of a negligence action embraces, at the very least, a causation-in-fact test, that is, the defendant's negligence must be a cause-in-fact of the plaintiff's claimed injuries. In this respect, a negligence action is no different from any other tort action as clearly there can be no liability for any tort unless it be shown that the defendant's act or omission was a cause-in-fact of the plaintiff's claimed injuries. To be sure, such a showing, without more, is insufficient to establish the 'proximate cause' element of a negligence action, but it is plainly a *sine qua non* ingredient thereof.

---

[2]The Miami-Dade Police Department Offense-Incident Report appears to back up this time, though closer to the ten-minute mark.

> The Florida courts, in accord with most other jurisdictions, have
> historically followed the so-called 'but for' causation-in-fact test,
> that is, 'to constitute proximate cause there must be such a natural,
> direct, and continuous sequence between the negligence act [or
> omission] and the [plaintiff's] injury that it can reasonably be said
> that but for the [negligent] act [or omission] the injury would not
> have occurred.'

*Stahl v. Metro. Dade County,* 438 So.2d 14, 17 (Fla. Dist. Ct. App. 1983) (edits in original)

(citations omitted).  Further, the Supreme Court of Florida has set forth a relatively succinct

definition of proximate cause and when it is appropriate for a judge to remove that matter from

consideration by the fact-finder:

> [W]e have said that harm is "proximate" in a legal sense if prudent
> human foresight would lead one to expect that similar harm is
> likely to be substantially caused by the specific act or omission in
> question. In other words, human experience teaches that the same
> harm can be expected to recur if the same act or omission is
> repeated in a similar context. However, as the *Restatement
> (Second) of Torts* has noted, it is immaterial that the defendant
> could not foresee the *precise* manner in which the injury occurred
> or its exact extent. In such instances, the true extent of the liability
> would remain questions for the jury to decide.
>
> On the other hand, an injury caused by a freakish and improbable
> chain of events would not be "proximate" precisely because it is
> unquestionably unforeseeable, even where the injury may have
> arisen from a zone of risk. The law does not impose liability for
> freak injuries that were utterly unpredictable in light of common
> human experience. Thus, as the *Restatement (Second) of Torts* has
> noted, a trial court has discretion to remove the issue from the jury
> if, after the event and looking back from the harm to the actor's
> negligent conduct, it appears to the court highly extraordinary that
> [the conduct] should have brought about the harm.
>
> Unlike in the "duty" context, the question of foreseeability as it
> relates to proximate causation generally must be left to the
> fact-finder to resolve. Thus, where reasonable persons could differ
> as to whether the facts establish proximate causation-i.e., whether
> the *specific* injury was genuinely foreseeable or merely an
> improbable freak-then the resolution of the issue must be left to the
> fact-finder. The judge is free to take this matter from the fact-finder
> only where the facts are unequivocal, such as where the evidence
> supports no more than a single reasonable inference.

*McCain v. Florida Power Corp.*,  593 So.2d 500, 503-04 (Fla. 1992) (emphasis in original)
(footnotes and internal citations and quotation marks omitted).  *See also Roberts v. Shop & Go,
Inc.*, 502 So.2d 915, 917 (Fla. Dist. Ct. App. 1986) ("[foreseeability] may also be determined as a
matter of law in the circumstance where . . . the intervening act is merely 'possible' rather than
'probable.'") (citation omitted).

Taking the facts in the light most favorable to Plaintiffs, for reasons explained below, I
find that the alleged negligence of Defendant was not the proximate cause of Mr. Palma's
injuries.

It cannot be said that there was a natural, direct, and continuous sequence between the
alleged negligence of BP and the injuries to Mr. Palma.  Plaintiffs allege, *inter alia*, in their
Complaint, Response to the motion for summary judgment, and through the affidavit of their
proffered "negligent management practices" expert, that BP was negligent in failing to
adequately staff the gas station, failing to properly train personnel, failing to provide personnel
with adequate visibility of the premises, failing to warn invitees of potential dangers of third-
parties, and failing to install a high profile security camera system which Plaintiffs allege would
have acted as a deterrent.  Here the chain of events was as follows: Mrs. Palma pulls into the gas
station, where the Xterra is already parked; Mr. Palma proceeds without incident into the
convenience store and pre-pays; Mr. Palma begins pumping his fuel and is confronted by the
driver of the Xterra who had been attempting to siphon gas at other pumps; Mr. Palma rebuffs
the driver and finishes pumping his gas; Mr. Palma goes back to get his change; in the process of
moving to a different pump, the Xterra strikes the Palma's vehicle; Mrs. Palma approaches the
driver of the Xterra regarding the damage to her car; the driver refuses to acknowledge the
damage and curses at Mrs. Palma; Mr. Palma exits the convenience store and his wife tells him
about the accident; Mr. Palma attempts to get the driver of the Xterra to observe the damage;
upon failing to do so, he announces he is calling the police and begins to dial 911; the driver then
yells to his associates who, along with the driver, attack Mr. Palma.

Working backwards in time from the injury, the attack was not a natural and probable
result of the alleged negligence.  *See Cone v. Inter County Tel. & Tel. Co.,*  40 So.2d 148, 149
(Fla.1949) ("It is only when injury . . . resulted directly and in ordinary natural sequence from a

negligent act without the intervention of any independent efficient cause, or is such as ordinarily and naturally should have been regarded as a probable, not a mere possible, result of the negligent act, that such injured person is entitled to recover . . . .").

> 'Natural and probable' consequences are those which a person by prudent human foresight can be expected to anticipate as likely to result from an act, because they happen so frequently from the commission of such act that in the field of human experience they may be expected to happen again. 'Possible' consequences are those which happen so infrequently from the commission of a particular act, that in the field of human experience they are not expected as likely to happen again from the commission of the same act.

*Id.* (citation omitted).  The attack occurred not because of lack of BP personnel or security cameras, or even the underlying attempts to siphon gasoline, but because of the confrontation over the damage to the Palma's vehicle.  That confrontation amounts to an intervention of an independent efficient cause.[3]  It is clear from the record that neither of the Palmas were concerned about the activity going on around them, and that if the accident had not occurred, Mr. Palma would never have had a reason to confront the driver of the Xterra or to attempt to call the police.  In fact, the earlier interaction between Mr. Palma and the driver of the Xterra supports this conclusion.  No further confrontation, let alone attack, occurred as the result of Mr. Palma refusing to relinquish to the driver of the Xterra his access to the gas pump he was using.  Furthermore, even if the accident were not an independent efficient cause, in the field of human experience, it is not a natural and probable consequence of inadequate training, staffing, and monitoring, that a group of men, allegedly in the midst of perpetrating a non-violent theft crime, would commit a brutal attack such as this because of a minor traffic accident.  *See Roberts*, 502 So.2d at 916-18 (affirming dismissal of a complaint where the sudden criminal actions of a third-party, even taking place in a high-crime area and where the gas station clerk knew something was amiss, were unforeseeable and "well outside the concept of 'natural' and 'probable' consequences[.]")

---

[3]I recognize that Florida courts have held that proximate cause may still exist where an independent intervening cause is itself probable or foreseeable.  *See Stahl,* 438 So.2d at 20. Here, however, while the car accident may have been foreseeable, the resulting attack was neither foreseeable nor probable.

There is no dispute before the Court that a zone of risk existed.  Specifically, the BP gas station was classified as a high risk property for violent crimes.  And, several felonies, including two robberies, had occurred at the station in the three years preceding the attack on Mr. Palma.  However, Plaintiffs' attempts to parlay these prior crimes into notice to BP such that the injury to Mr. Palma became foreseeable, necessarily fails.  Plaintiff's rely on *Crislip v. Holland*, 401 So.2d 1115, 1117 (Fla. Dist. Ct. App. 1981), for the proposition that "all that is necessary in order for liability to arise is that the tortfeasor be able to foresee that some injury will likely result in some manner as a consequence of his negligent acts."[4]  However, "an injury caused by a freakish and improbable chain of events would not be 'proximate' precisely because it is unquestionably unforeseeable, even where the injury may have arisen from a zone of risk."  *McCain,* 593 So.2d at 503.

In *Crislip*, unlike here, the injury was the direct result of the tortfeasor, not a third-party.  There, the City of Fort Pierce, as a benchmark for surveying purposes, installed a spike on a utility pole.  *Crislip*, 401 So.2d at 1116.  Crislip was a passenger in a vehicle that ran a stop sign, hit another vehicle, rolled onto its side, and came to rest by the utility pole.  *Id.*  Crislip was ejected during the accident, and her leg was impaled on the spike.  *Id.*  The City conceded that the spike created a safety hazard, but argued that the method of injury in Crislip's case was unforeseeable. *Id.* at 1117.  The court found, however, that the method of injury was irrelevant because the City, "through the exercise of reasonable foresight, might have reasonably anticipated that some person would come in dangerous contact with the spike in some manner." *Id.*  There are at least two key differences between *Crislip* and this case.  First, in *Crislip* the implement that actually caused the injury was installed by the tortfeasor.  Here though, the "implement" that injured Mr. Palma was a third-party, outside the control of the alleged tortfeasor.  Second, and as stated slightly differently *supra*, no matter the amount of reasonable foresight here, Defendant could not have reasonably anticipated that a customer would be attacked after a minor confrontation over a minor car accident, by a group of individuals

---

[4]Plaintiffs also rely on *McCain* and *Chambers v. Loftin*, 67 So.2d 220 (Fla. 1953) to support their foreseeability arguments based on prior incidents.  Neither case is properly applicable here for that purpose.  At best, Plaintiffs' reliance on these cases supports that a duty to provide security existed.  Since Defendant has not disputed duty, this line of argument is irrelevant.  Clearly, *McCain* is still applicable to the question of proximate cause.

allegedly attempting to commit a non-violent theft.

**CONCLUSION**

The attack on Mr. Palma arose from a zone of risk, but the chain of events that ultimately led to his injuries was so improbable and "freakish" as to be unforeseeable.  Accordingly, the alleged negligent acts of Defendant BP Products North America, Inc. were not the proximate cause of Plaintiff Ronald De Jesus Palma's injuries.  Therefore, Defendant is not liable for the injuries suffered by Mr. Palma.  Defendant's Motion for Summary Judgment [DE 47] is **GRANTED**.  A final judgment will issue by separate order.  The Clerk shall **CLOSE** this case. All pending motions are **DENIED AS MOOT**.

**DONE and ORDERED** in Chambers at Miami, Florida this 9th day of January 2009.

_____

MARCIA G. COOKE
United States District Judge

Copies furnished to:
*The Hon. Ted E. Bandstra*
*Counsel of Record*